IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY FELIX,<br><br>    Plaintiff.<br><br>v.<br><br>JOANNE B. BARNHART,<br><br>    Defendant.<br>_____/ | No.  C 04-3105 MJJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

Before the Court are cross-motions for summary judgment in a Social Security appeal brought by Ray Felix Jr. ("Plaintiff") and Joanne B. Barnhart, Commissioner of the Social Security Administration ("Defendant").  These motions require the Court to determine if (1) substantial evidence exists in support of the Administrative Law Judge's ("ALJ") decision, and (2) correct legal standards were applied.  For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment, **DENIES** Defendant's motion for summary judgment, and **REMANDS** the case to the ALJ for a determination consistent with this opinion.

### FACTUAL BACKGROUND

Plaintiff seeks review of the February 26, 2003 unfavorable decision by Administrative Law Judge ("ALJ") Richard P. Laverdure regarding Plaintiff's claim for disability benefits.  Plaintiff, at

the time of the ALJ hearing, was a 42 year-old, 6 foot 8 inch man, weighing approximately 370 pounds, who completed the 11th grade. Plaintiff earned sufficient quarters of Social Security coverage to remain insured until March 31, 2002, his Date Last Insured ("DLI").

Plaintiff was injured on May 5, 1998, when he became caught in an automatic door which squeezed his pelvis, causing intense pain to his testicles and inguinal areas. Plaintiff filed his application for disability insurance benefits on August 31, 2001, alleging disability beginning on May 5, 1998. Plaintiff based his disability claim on his pelvic injury and resulting ilioinguinal neuropathy, a right shoulder rotator cuff tear, knee complications, obesity, asthma, diabetes mellitus, and carpal tunnel syndrome. In addition, Plaintiff complained that his medications did not always help ease his pain, that his clothing bothers him, and as a result, he wears a robe most of the time. Plaintiff testified that he is unable to sit upright, and needs to sit back or recline. Plaintiff also complained of being unable to sleep more than three and a half hours per night, and subsequently needs frequent rest periods during the day.

Plaintiff was diagnosed on July 14, 1998, as having torsion of the testicle, with ilioinguinal neuropathy. Plaintiff underwent a series of four ilioinguinal nerve blocks, beginning on July 29, 1998 and ending on October 21, 1998. After the last injection, Plaintiff indicated that he experienced better relief and hoped that he might return to work. However, he returned for further treatment on January 4, 1999, complaining of increased pain and being out of medications.

On April 26, 1999, Plaintiff was examined by Dr. Remer, who recommended a series of hypogastric nerve blocks, which were performed on June 1 and July 6, 1999. Plaintiff was examined again on July 26, 1999, and he demonstrated some, but not total, improvement. On October 28, 1999, Dr. Remer opined that Plaintiff's condition continued to cause him pain in the left groin and down into the front of the left thigh. It was acknowledged that Plaintiff required the use of narcotic medications in order to function even minimally, and that his ability to perform daily activities was limited to sitting only brief periods of 15 minutes or less.

Plaintiff underwent an MRI of the pelvis on April 6, 2000, which showed nothing unusual. On April 12, 2000, Dr. Remer noted Plaintiff's motor testing revealed trace weakness in his left hamstring, and described atrophy and weakness in his impression of Plaintiff's situation. On June 7,

2000, Dr. Remer reported that Plaintiff suffers from chronic pain and disability and that Plaintiff was unable to work as a result of his continued pain and physical problems. On November 5, 2001, Plaintiff was re-examined and it was noted in his file that he had attempted to return to work on a part-time basis, but had to stop because he was unable to tolerate the pain. The next clinic note is dated January 18, 2002, and mentions that Plaintiff returned to full-time work, but was having difficulty with increased pain. Dr. Remer opined that Plaintiff's symptoms indicated possible femoral nerve injury.

On October 20, 2002, Plaintiff underwent MRI of the right knee, which revealed a small tear in the medial meniscus. On January 3, 2003, Plaintiff underwent a right knee arthroscopy with partial meniscectomy. On February 10, 2003, Plaintiff underwent MRI of the left knee, which revealed a possible small tear in the meniscus, and a small evolving Baker's cyst.

During his hearing, Plaintiff alleged multiple emergency room visits while in California, but there was no evidence submitted to corroborate this allegation. Furthermore, the record demonstrates that between April 14, 2000 and February 27, 2003, Plaintiff claimed to have lost or run out of his prescription and requested an early refill on five occasions.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. A dissatisfied Social Security claimant may seek judicial review in federal district court, under 42 U.S.C. sections 405(g) and 421(d), after exhausting administrative remedies. *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988).

The Court may disturb the ALJ's final decision "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Smith v. Bowen*, 849 F.2d 1222, 1224 (9th Cir. 1988). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[C]onsidering the entire record, [substantial evidence] is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved

3

1  by the ALJ.  *Magallanes*, 881 F.2d at 750.  The decision of the ALJ will be upheld if the evidence is
2  "susceptible to more than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th
3  Cir. 1995).  A decision of the ALJ will not be reversed for errors that are harmless.  *Curry v.*
4  *Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

## ANALYSIS

6        To qualify for Title II and Title XVI benefits, a claimant must establish a medically
7  determinable physical or mental impairment that is expected to result in death or last for a
8  continuous period of at least twelve months that prevents him from engaging in substantial gainful
9  activity.  42 U.S.C. § 423(d)(1)(A).  In addition, to establish a disability, an individual "must show
10 that he is precluded from engaging not only in his 'previous work,' but also from performing 'any
11 other kind of substantial gainful work that exists in the national economy.'"  *Matthews*, 10 F.3d at
12 680 (quoting 42 U.S.C. § 423(d)(1)(A)).

13       To determine whether a claimant is disabled and entitled to benefits, the ALJ conducts a five-
14 step sequential inquiry.  20 C.F.R. §§ 404.1520, 415.920.  In the first step, the ALJ considers
15 whether the claimant is currently engaged in substantial gainful activity.  If not, the ALJ assesses
16 whether the claimant has a severe impairment.  In step three, the ALJ determines whether the
17 claimant has a condition which meets or equals the conditions outlined in the Listings of
18 Impairments in Appendix 1, Subpart P, Regulation 4.  20 C.F.R. § 404.1520.  If the claimant does
19 not have such a condition, step four requires the ALJ to determine whether the claimant has the
20 Residual Functional Capacity ("RFC") to perform his past relevant work.  If not, in step five, the
21 ALJ considers whether the claimant has the ability to perform other work which exists in substantial
22 numbers in the national economy.  20 C.F.R. §§ 404.1520(b)-(f), 404.920(b)-(f).

23       Here, the ALJ conducted the five-step sequential inquiry and found that Plaintiff was not
24 disabled.  In step one, the ALJ found that Plaintiff had not engaged in any substantial or gainful
25 activity since May 5, 1998, the alleged onset date.  In step two, the ALJ found that Plaintiff's
26 "severe" impairments include a status post pelvic crush injury and ilioinguinal neuropathy, status
27 post right shoulder rotator cuff tear, status post multiple knee surgery, and obesity.  In addition, the
28 ALJ noted that Plaintiff has asthma and diabetes mellitus, which are controlled by medication, but

1  were considered in combination with Plaintiff's other impairments.  In step three, the ALJ found that
2  although Planitiff suffered from severe impairments, they were not severe enough to meet or
3  medically equal one of the impairments listed in 20 C.F.R., Part 404, Appendix 1 to Subpart P of the
4  Social Security Regulations No. 4.  In step four, the ALJ found that based on Plaintiff's RFC, he is
5  unable to perform any of his past relevant work ("PRW").  The ALJ went on to consider in step four
6  whether there are other jobs existing in significant numbers in the national economy that Plaintiff
7  can perform, consistent with his RFC.  Plaintiff was found to retain the RFC to perform less than a
8  full range of light work, which includes a substantial range of sedentary work.  This led the ALJ to a
9  finding of "not disabled" for Plaintiff, on the basis that there are jobs existing in significant numbers
10 in the national economy which Plaintiff is able to perform.

Plaintiff challenges the ALJ's findings on two grounds:  (1) whether the ALJ failed to adequately consider Plaintiff's obesity when determining his residual functional capacity; and (2) whether the ALJ improperly discounted Plaintiff's testimony and statements regarding his allegations of pain.

**A.    The ALJ's Consideration of Plaintiff's Obesity in Determining Residual Functional Capacity**

Plaintiff argues that the ALJ erred when determining his RFC by failing to adequately consider the additional and cumulative effects of Plaintiff's obesity.  Defendant asserts that the ALJ sufficiently took into account Plaintiff's obesity because obesity was referred to in the ALJ's decision and, in determining Plaintiff's RFC, the ALJ relied upon the assessment of physicians who noted Plaintiff's obesity.  Plaintiff responds that although the ALJ mentioned Plaintiff's obesity in the opinion, the effects of obesity in combination with other impairments were not adequately discussed in determining Plaintiff's RFC.  Additionally, Plaintiff asserts that the mere mention of obesity fails to properly provide the rationale required by a reviewing court.

In determining an adult's RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within

5

the work environment." SSR No. 02-01p.[1]  In addition, the Social Security Regulations require an explanation of how the conclusions were reached on whether obesity caused any physical limitations.  SSR No. 02-01p.  The requirement of an explanation by the ALJ must be viewed in the context of setting forth a rationale that permits a claimant to know why his claim has been rejected. "Any such decision by the Commissioner of Social Security . . . shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based."  42 U.S.C. § 405. The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ took note of Plaintiff's obesity, and in fact, found it a severe impairment in step two of his analysis.  In the ALJ's analysis of Plaintiff's RFC, the ALJ mentioned that Plaintiff needs assistance getting dressed, particularly with getting his shoes/socks on, but did not attribute this difficulty to Plaintiff's obesity.  In addition, the ALJ noted that Plaintiff alleged that he had gained about 65 pounds since his injury.  However, the ALJ did not explicitly discuss whether Plaintiff's obesity affected his ability to perform a range of light and sedentary work.

The ALJ relied upon two medical assessments in making his RFC analysis: the assessment of the State Agency physician, who filled out a form entitled "Physical Residual Functional Capacity Assesment" ("PRFCA"); and the report of the consultative examiner, who completed a "comprehensive orthopedic evaluation."  Where a Physical Residual Functional Capacity Assessment ("PRFCA") form is incomplete, "[t]o the extent that the ALJ's judgment rests upon [the PRFCA's] conclusions, it does not rest upon substantial evidence."  *Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003).  In *Celya*, the court held that the ALJ's exclusion of obesity from his analysis was error, despite his reliance upon a PRFCA report.  The court found that the PRFCA form did not adhere to the directions on the form that required the person completing it to "describe how the evidence substantiates [the] conclusions."  *Celaya*, 332 F.3d at 1184 (alterations in original).

---

[1] Social Security Rulings are administrative interpretations of regulations and do not have the force of law.  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).  Nonetheless, the Court is to accord due deference to the Rulings unless they are plainly erroneous or inconsistent with the Social Security Act and regulations.  *Paxton v. Sec'y of Health & Human Services*, 856 F.2d 1352, 1356 (9th Cir. 1988); *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-48 (1984).

1    Here, the PRFCA was similarly sparse. There were no explanations of how and why the
2 evidence supported the conclusions made on the form. (Administrative Transcript ("Tr.") at
3 154,155.) The only mention of obesity occurred on the last page, under Additional Comments,
4 where it was noted, "Obesity - 6'8" @ 300#." (Tr. at 160.) There was no discussion of obesity or
5 the effect of Plaintiff's obesity on his physical work limitations.
6    The second report the ALJ relied on was that of the consultative examiner, who completed a
7 "comprehensive orthopedic evaluation." (Tr. at 149-52.) The evaluation was based on a fill in the
8 blank questionnaire and a physical examination. At trial, Plaintiff disputed the thoroughness of the
9 examination, testifying that the doctor only examined him for four minutes. The written evaluation
10 noted Plaintiff's obesity, his height and weight. There was no further discussion or mention of
11 Plaintiff's obesity. To the extent the ALJ relied upon the consultative examiner's report as evidence
12 of Plaintiff's obesity, like in *Celaya*, this does not constitute substantial evidence.
13    Defendant also argues that the ALJ's mention of obesity shows that he took obesity into
14 consideration in the RFC analysis. Plaintiff asserts that the ALJ's lack of discussion of obesity, and
15 his failure to further develop the record regarding Plaintiff's obesity, is legal error. In *Stack v.*
16 *Barnhart*, an ALJ made a passing reference to the plaintiff's obesity, and relied upon functional
17 capacity assessments. 327 F. Supp. 2d 1175 (C.D. Cal. 2004). The *Stack* court found that "the
18 ALJ's passing reference to a recommended weight loss program falls far short of acknowledging a
19 diagnosis of obesity and weighing the effect[s] of that obesity." *Id*. at 1179. The court remanded the
20 case with the instruction that the "ALJ also shall consider and discuss how Plaintiff's obesity factors
21 into her residual functional capacity." *Id*. The seminal word here is "discuss," which is exactly
22 what the ALJ in the present case failed to do. The ALJ did not mention obesity in his RFC analysis,
23 nor discuss how it factored into his RFC findings. Therefore, the Court finds that the ALJ did not
24 adequately consider Plaintiff's obesity in his RFC analysis.
25    Even if the ALJ considered obesity, the fact that he did not explain this in his analysis is
26 legal error. Where the basis for the ALJ's decision is unclear, the case should be remanded for
27 clarification. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). In *Barrett*, the court stated
28 that "[m]aybe the [ALJ] thought that since he had already ruled that Barrett's obesity was a sever

7

impairment, though not totally disabling in itself, conditions caused or aggravated by obesity were irrelevant. That of course would be wrong." *Id*. at 1068. The court then stated that "[t]he problem is that we don't know what he thought." *Id*. at 1068. The *Barrett* court remanded the matter because of the cumulative effect of the ALJ's errors and omissions.

Here, it is unclear on what basis the ALJ concluded that Plaintiff's obesity did not affect his RFC. The ALJ did not explain how he came to his conclusion, and it is unclear as to whether or not he even considered Plaintiff's obesity in the RFC analysis. "[I]n order to make our review meaningful, we must be able to determine what statutory and regulatory requirements the ALJ did in fact apply -- where we cannot do that we must vacate and require a remand to the Secretary for clarification." *Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) (quoted with approval in *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Therefore, it cannot be determined whether or not the ALJ applied the regulatory requirement that an ALJ assess the effects of obesity on a plaintiff's RFC.

Defendant's attempt to compare the present case to *Burch v. Barnhart* is not persuasive. 400 F.3d 676 (9th Cir. 2005), *ordered published at* 2005 U.S. App. LEXIS 3756 (9th Cir. Mar. 7, 2005). In *Burch*, the ALJ had merely acknowledged the plaintiff's obesity in passing. The *Burch* court found that the ALJ adequately considered the plaintiff's obesity in his RFC analysis, noting that the record did not indicate that the plaintiff's obesity exacerbated her symptoms. *Id*. at 684. However, *Burch* is distinguishable for two reasons: first, the ALJ in *Burch* did not find the plaintiff's obesity was severe, leaving no reason for the ALJ to further develop the record regarding the plaintiff's obesity;[2] and second, the plaintiff in *Burch* was represented by counsel.

Here, the ALJ's finding that Plaintiff's obesity was severe, the numerous references to Plaintiff's obesity in the record and the fact that Plaintiff was not represented by counsel, were more than enough reason to alert the ALJ that Plaintiff's obesity may have an effect on his RFC, and trigger the ALJ's duty to fully develop the record. "[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for

---

[2] The *Burch* court specifically mentioned this fact, noting that *Burch* was distinguishable on the fact that "Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illness." *Burch*, 400 F. 3d at 682 (quoting *Celaya*, 332 F. 3d at 1182).

8

all the relevant facts." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)).  Plaintiff was not represented by counsel (he was accompanied by a non-attorney representative), and therefore the ALJ should have inquired into the effects, if any, of Plaintiff's obesity on his ability to perform the range of work attributed to him.  Even if the effect of Plaintiff's obesity was unclear, it was the ALJ's duty to further investigate and determine what, if any, effects there were.

In sum, the ALJ provided no discussion of Plaintiff's obesity, nor of whether it caused any physical limitations, and the ALJ failed to explain how his conclusions regarding Plaintiff's RFC and obesity were reached.  Based upon a review of the record, and in accordance with *Celaya* and *Stack*, the Court finds that the ALJ did not adequately consider Plaintiff's obesity in conducting the RFC analysis, and did not rely upon substantial evidence in his determination of Plaintiff's RFC.

**B.     Plaintiff's Testimony and Statements Regarding his Allegations of Pain**

Plaintiff argues that the ALJ improperly rejected the existence and significance of his neuropathic pain without citing "clear and convincing" reasons for doing so.  Defendant argues that the ALJ did not find the statements false, but instead found them exaggerated due to inconsistencies in Plaintiff's testimony.

An ALJ may not discredit a plaintiff's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  If the ALJ finds a plaintiff's testimony not to be credible, the ALJ "must specifically make findings that support this conclusion."  *Id*. at 345.  If there is no affirmative evidence that the plaintiff is malingering, the ALJ must provide clear and convincing reasons for rejecting the plaintiff's testimony regarding severity of symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).  In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.  *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Here, the ALJ provided several reasons to support his conclusion that Plaintiff's testimony regarding the intensity, persistence and limiting effects of his impairments were exaggerated.

9

1  The ALJ noted that Plaintiff "had a habit of losing his prescription medication and then seeking
2  more." (Tr. At 21.) Plaintiff argues that the ALJ was implying a narcotic habit where there is no
3  evidence in the record of narcotic abuse or habit. Defendant argues that Plaintiff's repeated requests
4  for early refills of narcotic medication give rise to a reasonable inference that Plaintiff was abusing
5  drugs and that such behavior negatively impacted Plaintiff's credibility. Character evidence may be
6  used to assess the credibility of a claimant. *Bunnell v. Sullivan*, 947 F.2d 341, at 346-47 (9th Cir.
7  1991). If Plaintiff was lying in order to receive additional refills of his pain medication, that would
8  constitute a clear and convincing reason to find him lacking credibility. *See Fair*, 885 F.2d at 604
9  n.5 (noting that reputation for truthfulness may be taken into account to evaluate a claimant's
10 credibility).

11      The ALJ also mentioned that Plaintiff has a period of sporadic medical treatment.
12 "[U]nexplained, or inadequately explained, failure to seek treatment" is a proper form of evidence
13 on which an ALJ can rely to find a pain allegation incredible. *Id.* at 603. Here, there was a break in
14 Plaintiff's medical treatment from July 1999 until April 2000. However, during this time, there is
15 documentation that a procedure Plaintiff was supposed to undergo was denied by his insurance, and
16 he was therefore unable to be treated. In addition, Plaintiff testified to problems finding a doctor in
17 California that would treat him under his Texas Worker's Compensation benefits. This time period
18 coincides with part of the time period the ALJ cited as a period of "sporadic treatment." While
19 Plaintiff was able to explain part of his sporadic treatment, the Court finds that it was not improper
20 for the ALJ to find that Plaintiff failed to adequately explain his lack of consistent treatment.

21      The ALJ additionally pointed out that despite well-documented complaints of pain and a
22 serious injury, Plaintiff moved back and forth from Texas to California. At trial, Plaintiff said that
23 he moved from Texas to California in April of 2000, but had to return to Texas on several occasions
24 to straighten out his Workers Compensation issues, and for treatment because he could not find a
25 doctor in California that would take his Texas Worker's Compensation plan. Plaintiff's allegations
26 of pain may or may not be inconsistent with his flying to Texas to receive Worker's Compensation
27 and his medical treatment.

28      The ALJ also pointed out inconsistencies in Plaintiff's testimony regarding the number of

10

hours he rested during the day. The ALJ noted that Plaintiff indicated that he takes naps during the day, resting between one and four hours at a time, but denied sleeping during the day at the hearing. However, an examination of the record reveals that the original question Plaintiff answered was on a questionnaire dated May 2, 2002, and was worded: "Do you require rest periods or naps during the day?" (Tr. at 102.) Plaintiff answered yes, with the comment "One or two times a day from one to four hours." While Plaintiff's statement is equivocal, the ALJ implied it was inconsistent with Plaintiff's statement at trial that he did not "sleep" during the day.

Where a claimant's testimony is somewhat equivocal, and the ALJ's interpretation of his testimony may not be the only reasonable one, as long the ALJ's interpretation is reasonable and supported by substantial evidence, it is not the reviewing court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In *Rollins*, even though some of the testimony was equivocal, the court still found that the "ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence." *Id*. Here, although each of the inconsistencies cited by the ALJ are somewhat equivocal, the Court will not second-guess the ALJ's determination on credibility. *See id*.; *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (finding that even where evidence may lead to an interpretation more favorable to a Plaintiff, if the ALJ's interpretation was rational, the ALJ's decision must be upheld "where the evidence is susceptible to more than one rational interpretation.") (citing *Magallanes*, 881 F.2d at 750). Even though each of reasons given by the ALJ could be interpreted in a light more favorable to Plaintiff, the instances cited could rationally lead to the ALJ's finding that Plaintiff lacked credibility. Therefore, the Court finds that the ALJ gave clear and convincing reasons for discounting portions of Plaintiff's pain testimony, and those reasons were supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** and **REMANDED** to the ALJ for a determination consistent with this opinion.

///

///

**IT IS SO ORDERED.**

Dated: August __11_, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE